USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
ALPHONSO SIMMONS,

                          Plaintiff,          07 Civ. 7383 (DAB)
                                              ADOPTION OF REPORT
        -against-                             AND RECOMMENDATION

FRANK ROBINSON, Grievance Supervisor,
Sing Sing Correctional Facility;
ANTHONY CHU, Food Service Administrator,
Sing Sing Correctional Facility;
KENNETH DECKER, Acting Superintendent,
Sing Sing Correctional Facility;
JOHN NUTTAL, Deputy Commissioner of
Program Services, New York State
Department of Correctional Services;
BRIAN FISCHER, Commissioner of the
New York State Department of
Correctional Services;
                          Defendants.
--------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Plaintiff Alphonso Simmons, proceeding pro se and in forma

pauperis, filed this Complaint on July 23, 2007 pursuant to 42

U.S.C. § 1983, alleging that while housed at Sing Sing

Correctional Facility, Defendants, who are current and former

employees of the New York State Department of Correctional

Services ("DOCS"), violated his rights under the First, Eighth

and Fourteenth Amendments of the United States Constitution.[1]

_____

    [1]Although Plaintiff did not specifically identify the
Religious Land Use and Institutionalized Persons Act of 2000
("RLUIPA"), 114 Stat. 804, 42 U.S.C. §§ 2000cc et seq., in his
Complaint, the Defendants addressed it in their briefing given
Plaintiff's pro se status and RLUIPA's applicability to
Plaintiff's claims.  (Defs.' Mem. at 20.)

Defendants moved for Summary Judgment on October 31, 2008. On January 28, 2010, Magistrate Judge Douglas F. Eaton issued a Report and Recommendation ("Report") in the above-captioned matter recommending that Defendants' Motion for Summary Judgment be granted in its entirety. Plaintiff filed timely objections to the Report.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Court is required to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This Court, therefore, reviews de novo Plaintiff's objections regarding exhaustion of his claims, cross-contamination at Sing Sing, and religious discrimination. Where a party raises only general objections, and for portions of the Report to which no objection is made, "a district court need only satisfy itself there is no clear error on the face of the record." See Advance Coatina Tech. Inc. v. LEP Chem. Ltd., 142 F.R.D. 91, 94 (S.D.N.Y. 1992). Because Plaintiff's remaining objections regarding the scope of discovery and bias in the proceedings are general or seek to relitigate prior arguments, this Court reviews the remainder of the Report for clear error.

After conducting the appropriate level of review, the Court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. §

636(b)(1)(C); see also Local Rule 72.1(d).  For the reasons
contained herein, this Court ADOPTS the findings of Magistrate
Judge Eaton and grants Defendants' Motion for Summary Judgment.


## I. BACKGROUND

The facts in this matter are described in Judge Eaton's
Report and will not be restated fully here.  Magistrate Judge
Eaton found that 1) Plaintiff failed to exhaust his claims
relating to food preparation at Attica, Green Haven, and the Food
Production Center in Rome, New York; 2) there is no genuine issue
of material fact as to whether the food sanitation at Sing Sing
unlawfully burdened Plaintiff's religious rights; 3) the
Religious Alternative Menu ("RAM") program is nutritionally
adequate[2] and does not burden Plaintiff's rights under the First
Amendment or RLUIPA; and 4) providing only the RAM program to
Plaintiff while allowing Jewish inmates to participate in the
Cold Alternative Diet ("CAD") program does not violate

---

[2]Although Magistrate Judge Eaton's Report and Recommendation
does not explicitly address the Eighth Amendment, the finding
that the RAM program is nutritionally adequate speaks to
Plaintiff's Eighth Amendment claims.  Robles v. Coughlin, 725
F.2d 12, 15 (2d Cir. 1983) ("[T]he Eighth Amendment . . .
require[s] that prisoner be served nutritionally adequate food
that is prepared and served under conditions which do not present
an immediate danger to the health and well being of the inmates
who consume it.") (internal quotation marks omitted).

Plaintiff's Fourteenth Amendment Equal Protection rights.

Subsequently, on March 2, 2010, Plaintiff filed numerous objections to the Report, which raise the following concerns: 1) the scope of discovery was limited improperly; 2) the proceedings were biased toward the Defendants; 3) Plaintiff's claims regarding policies and practices at Attica, Green Haven, and the Food Production Center were exhausted properly; 4) there is a genuine issue of material fact as to whether the utensils or components of the RAM meal were subject to cross-contamination; 5) the food service at Sing Sing is discriminatory to Muslim inmates when compared to the services available to Jewish inmates; and 6) Plaintiff was not permitted to question Defendants' expert witness.  On May 7, 2010, Defendants filed a Response to Plaintiff's Objections to the Report.

Because Plaintiff is proceeding pro se, the Court must consider his submissions liberally, and interpret them to raise the strongest arguments they can suggest.  See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (citing Burgos v. Hopkins, 41 F.3d 787, 790 (2d Cir. 1994)).  Nevertheless, when a party raises only general objections to the report, "a district court need only review the record for clear error." Brown v. Peters, No. 95 Civ. 1541, 1997 WL 599355, at *7 (N.D.N.Y. Sept. 22, 1997)(citing cases).

Even construed liberally, Plaintiff's objection regarding Judge Eaton's bias toward the Defendant does not challenge any factual finding or set forth any legal ground on which Magistrate Judge Eaton erred. The Court need not, and does not, give this objection <u>de novo</u> review.

Furthermore, "a <u>pro se</u> party's objections to the Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party will be allowed a second bite at the apple by simply relitigating a prior argument." <u>DiPilato v. 7-Eleven, Inc.</u>, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citing <u>Pickney v. Progressive Home Health Services</u>, No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)). Here, Plaintiff's objection regarding the scope of discovery simply restates the same arguments set forth in Plaintiff's previously rejected motions and papers, and thus is reviewed for clear error.  The remainder of Plaintiff's objections are reviewed <u>de novo</u>.

Accordingly, the Court reviews de novo the following objections: 1) Plaintiff's claims regarding policies and practices at Attica, Green Haven, and the Food Production Center ("FPC") were exhausted properly; 2) there is a genuine issue of material fact as to whether the utensils or components of the RAM meal were subject to cross contamination in violation of

Plaintiff's rights under the First Amendment and RLUIPA; 3) the food service at Sing Sing discriminates against Muslim inmates; and 4) Plaintiff was not permitted to question the Defendants' expert witness.

## II. DISCUSSION

### A.   Legal Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." <u>James v. New York Racing Ass'n</u>, 223 F.3d 149, 152 (2d Cir. 2000).  While a court must always construe "the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor," <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 74 (2d Cir 2008), the non-moving party may not rely on "conclusory allegations or unsubstantiated speculation" to preclude summary judgment. <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005).  Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Zelnik v. Fashion Institute of Technology</u>, 464 F.3d 217, 224 (2d Cir. 2006) (quoting Fed.R.Civ.P. 56(e)).

Establishing such facts requires going beyond the allegations of
the pleadings, as the moment has arrived "'to put up or shut
up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.
2000) (citation omitted).

B.   Plaintiff's Specific Objections

     1.   Exhaustion of Administrative Remedies

     The Prison Litigation Reform Act (the "PLRA") mandates that
a prisoner must exhaust all administrative remedies before
bringing an action in federal court regarding prison conditions.
42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement "applies
to all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether they
allege excessive force or some other wrong." Porter v. Nussle,
534 U.S. 516, 532 (2002). Failure to exhaust is an affirmative
defense that defendants bear the burden of pleading. Jones v.
Block, 549 U.S. 199, 216 (2007).

     In order to satisfy the PLRA exhaustion requirement, an
inmate must exhaust administrative remedies properly, meaning
that an inmate "must complete the administrative review process
in accordance with the applicable procedural rules—rules that are
defined not by the PLRA, but by the prison grievance process
itself." Woodford v. Ngo, 548 U.S. 81, 88 (2006). DOCS has a
three-step Inmate Grievance Program ("IGP") that an inmate must

7

complete to exhaust administrative remedies fully.  See Neal v. Goord, 267 F.3d 116, 112 (2d Cir. 2001).

In this case, Plaintiff filed and fully exhausted his 2006 Sing Sing grievance, which alleged: (1) that the manner in which pork was being served at Sing Sing subjected the Religious Alternative Menu ("RAM") option to cross contamination; and (2) that the dishes and utensils at Sing Sing were washed in the same machine as those used for the general population and thus were also subject to cross contamination.  (Compl. Ex. B).

Plaintiff subsequently commenced this action, alleging that Defendants violated his constitutional rights by: (1) failing to investigate his Sing Sing grievance properly; (2) failing to maintain the integrity of the food service at Sing Sing; (3) causing Plaintiff to use dishes and utensils contaminated by pork products at Sing Sing; (4) discriminating against Muslim inmates by not providing them with hermetically sealed meals and utensils similar to those provided to Jewish inmates at Sing Sing; (5) "failing to ensure all mess halls in all correctional facilities in the State of New York . . . provide Muslim inmates with foods that are 'wholly free of pork products,'" (Compl. ¶ 41); and (6) failing to notify Plaintiff that products produced at DOCS Food Production Center ("FPC") are possibly made haram, or unlawful for him to eat, because they are prepared and packaged with the

8

same equipment used to prepare and package pork items.

Claims (1) through (3) were raised in Plaintiff's grievance. Defendants concede that Plaintiff has exhausted the discrimination claim (Claim (4)) because it "closely followed issues Plaintiff raised in his grievance." (Reply Mem. at 4). Defendants object to Plaintiff's attempts to raise the remaining claims (Claim (5) and Claim (6)) "to serve as additional constitutional violations or to bolster his claims concerning the constitutionality of Sing Sing's food service." (Reply Mem. at 4). Defendants contend that these claims should be barred because Plaintiff did not file any grievances regarding issues beyond Sing Sing and has thus failed to exhaust his available administrative remedies. Judge Eaton agreed with Defendants and limited Plaintiff's claims to those raised in his Sing Sing grievance. (Report at 4).

Plaintiff, however asserts that his failure to exhaust his administrative remedies should not bar claims 5 and 6. (Obj. ¶ 12). Plaintiff contends that he exhausted his claims regarding the alleged cross contamination at DOCS FPC, Attica and Green Haven Correctional Facilities, and his claims regarding the sufficiency of the cleaning procedures at Attica and Green Haven, because his Sing Sing grievance alerted Defendants to the problems of cross contamination and the inadequacy of cleaning

procedures generally. (Obj. ¶ 11).

The Second Circuit has held that "alerting the prison officials to the nature of the wrong for which redress is sought,' [without filing a formal grievance] does not constitute proper exhaustion." Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (internal citations omitted). Nevertheless, a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance. See Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (holding that a claim for denial of medical care was exhausted where a grievance alleged excessive force and retaliation because "it was clear that the state had considered these allegations when reviewing [the] grievance"). Thus, the question for the Court is whether Plaintiff's grievance "provided enough information to alert the prison to the nature of the wrong for which redress [was] sought, and to afford[]. . . time and opportunity [for the State] to address [the] complaint internally," Espinal v. Goord, 558 F.3d at 127 (internal citations omitted).

Drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff's Sing Sing grievance cannot be construed to place Defendants on notice of claims regarding alleged cross contamination at DOCS FPC and at Attica and Green Haven, or claims regarding the cleaning procedures at Attica and Green

10

Haven.  Plaintiff's fully exhausted grievance alerted Defendants
to two alleged problems: (1) that when pork was served in the
Sing Sing mess hall, the manner in which it was served subjected
the RAM option to cross contamination; and (2) that all of the
dishes at Sing Sing were washed in same machine and thus also
subject to cross contamination. (Compl. Ex. B).  Defendants
investigated Plaintiff's grievance and issued a decision that
addressed the service of pork and the cleaning of dishes at Sing
Sing. (Compl. Ex. B; Robinson Decl. Exs. A-C.)   The record does
not indicate, nor does Plaintiff suggest, that Defendants
investigated food production and cleaning procedures at other
facilities when addressing Plaintiff's Sing Sing grievance.
Accordingly, the Court finds that Plaintiff's claims regarding
possible cross contamination at DOCS FPC, Attica, and Green
Haven, and his claims regarding the cleaning procedures at Attica
and Green Haven are not exhausted for the purposes of this
action.  Accordingly, Plaintiff's objection to Magistrate Judge
Eaton's finding on exhaustion is overruled.

    2.   Cross Contamination at Sing Sing.

    Plaintiff objects that there is a genuine issue of material
fact as to whether the sanitation practices at Sing Sing
subjected the RAM to cross contamination in violation of his
rights under the First Amendment and RLUIPA.  In support of this

contention, he makes the following objections: that DOCS began erecting barriers when pork was served, substantiating his claim that pork was being splashed (Obj. ¶ 4); that some dishes at Sing Sing are not washed at high temperatures (Obj. ¶¶ 18, 26); that the temperature logs DOCS provided are incomplete (Obj. ¶ 19) or have been altered (Obj. ¶ 20); that pork is cooked directly in pots and served in hotel pans that are not machine washed (Obj. ¶¶ 22, 26); that some components of the RAM overlap with the general meal and are therefore placed adjacent to "haram" items and subjected to cross contamination (Obj. ¶ 24); and that there are often visibly dirty dishes at Sing Sing and Defendants were aware of the problem due to grievances they received (Obj. ¶¶ 28-29).

Defendants produced evidence that the sanitation and RAM service procedures at Sing Sing were intended to preserve the rights of Muslim inmates to a diet consistent with their religious strictures. The Declaration of Sing Sing Food Administrator Anthony Chu states that pork is served only rarely and is separated from the RAM to the extent practicable. (Chu Decl. ¶¶ 5-6.) Additionally, a serving tray serves as a barrier between the pork and other food items. (Chu Decl., ¶ 6.) Serving equipment, utensils, and cooking pots are cleaned and sanitized by New York State Board of Health-approved methods,

12

either through hand washing or use of a dish machine.  (Id.,
¶ 8.)  The Westchester Department of Health inspects the facility
annually and the facility keeps temperature logs showing
dishwasher temperatures.  (Id., ¶ 9.)

    To state a claim under the First Amendment or RLUIPA, an
inmate "must show at the threshold that the disputed conduct
substantially burdens his sincerely held religious beliefs."
Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006).  A
recent case found that the sanitation procedures at Green Haven
Correctional Facility did not substantially burden the religious
beliefs of Muslim inmates.  Majid v. Fischer, 07 Civ. 4584, 2009
U.S. Dist. LEXIS 71616 (S.D.N.Y. July 31, 2009).  In reaching
that conclusion, the court relied on the opinion of Defendants'
expert, Imam Feisal Abdul Rauf (the "Imam"), who also toured Sing
Sing's dining facility to evaluate the claims made in this case.
On the subject of proper sanitation, the Imam concluded that the
sanitation policies and procedures in place at Sing Sing complied
with Islamic dietary law.  (Bauman Decl., Ex. C, p. 6.)
Nevertheless, the Imam noted the need for greater oversight to
ensure that sanitation policies were followed.  (Id.)  In
response, DOCS issued a memorandum on RAM service policies and
implemented new food service training requirements.  (Culkin
Decl, ¶14; Ex. A.)

13

This Court agrees with the court in <u>Majid</u> that the sanitation policies and procedures in place do not impose a substantial burden on Plaintiff's sincerely held religious beliefs.  <u>See</u> <u>Majid</u>, 2009 U.S. Dist. LEXIS 71616 at *25 (granting summary judgment on Plaintiff's RLUIPA and First Amendment claims and finding "abundant evidence indicating that service of RAM and the cleaning procedures in place at Green Haven conform to Islamic dietary law").  Accordingly, Plaintiff's Objection regarding cross contamination at Sing Sing is overruled.

3.    Plaintiff's Equal Protection Claims

Plaintiff objects to the Report on the grounds that Muslim inmates are provided with cheaper, soy-based products that are kosher and therefore meet the dietary requirements of Jewish inmates, but Jewish inmates get more expensive products in their CAD meals (Obj. ¶ 14; Pl.'s Opp. Mem. p. 4; Pl.'s Decl. ¶ 57), and that a Rabbi oversees the CAD program while no Muslim chaplain inspects food production (Obj. ¶ 41e; Pl.'s Decl. ¶ 58).

To make a claim under the Equal Protection Clause, a claimant "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  <u>Phillips v. Girdich</u>, 408 F.3d 124, 129 (2d Cir. 2005).  Further, "[h]e . . . must show that the disparity in treatment cannot survive the appropriate level of

14

scrutiny which, in the prison setting, means that he must

demonstrate that his treatment was not 'reasonably related to any

legitimate penological interests.'" Id. (quoting Shaw v. Murphy,

532 U.S. 223, 225 (2001)).

Where prison regulations draw distinctions among inmate

groups, whether the regulation is reasonably related to a

legitimate penological interest depends on application of the

four factors described in Turner v. Safley, 482 U.S. 78, 89-91

(1987). Those factors are: 1) whether there is a rational

relationship between the regulation and the legitimate government

interest asserted; 2) whether the inmates have alternative means

to exercise the right; 3) the impact that the accommodation of

the right will have on the prison system; and 4) whether ready

alternatives exist which accommodate the right and satisfy the

governmental interest. Benjamin v. Coughlin, 905 F.2d 571, 574

(2d Cir. 1990).

Here, Plaintiff's claims fail as a matter of law because he

has put forth no evidence tending to show that the disparity in

treatment between Muslim and Jewish inmates was the result of

intentional or purposeful discrimination. As the court pointed

out in Abdul-Malik v. Goord, 96 Civ. 1021, 1997 U.S. Dist. LEXIS

2047, at *24-25 (S.D.N.Y. Feb. 27, 1997), using meat versus

vegetables as a proxy for discrimination is inappropriate. The

15

CAD program is not necessarily more desirable, since it is cold and has less menu variety than the RAM program, which provides hot meals.  Id.  Both programs provide nutritionally adequate meals that conform to the respective religious demands.  Id.

Furthermore, courts have found repeatedly that the RAM program withstands scrutiny under the Equal Protection Clause when the Turner factors are applied.  See, Majid v. Fischer, 07 Civ. 4585, 2009 U.S. Dist. LEXIS 71616, at *14-30 (S.D.N.Y. July 31, 2009); Abdul-Malik, 1997 U.S. Dist. LEXIS 2047, at *24-29. As described in Majid, DOCS has a legitimate interest in meeting the dietary needs of multiple inmate groups in a cost-effective manner, and the mostly-meatless RAM option allows them to do so. Majid, 2009 U.S. Dist. LEXIS 71616 at *27-28.  Furthermore, providing a separate halal meal for Muslims would impose costs on the prison system.  Id. at 29.

Replacing the meat in the CAD meal with soy-based vegetarian products similar to those served in the RAM program may be more cost-effective, but where the meals provided are nutritionally adequate and meet the religious requirements of the inmates, courts will not "micromanage DOCS's menu planning."  Abdul-Malik, 1997 U.S. Dist. LEXIS 2047, at *29.  Accordingly, Plaintiff's Objection with respect to the Equal Protection claim is overruled.

16

4.    Deposition of Defendants' Expert Witness

Finally, Plaintiff objects that he was not permitted to depose Defendants' expert witness, Imam Feisal Abdul Rauf, (the "Imam"), because of his inability to pay the Imam's witness fees. (Obj. ¶ 31).

The Second Circuit has held that federal courts are not authorized to waive or pay witness fees on behalf of an in forma pauperis litigant. Malik v. LaValley, 994 F.2d 90, 90 (2d Cir. 1993); see also Murray v. Palmer, 2006 WL 2516485, at *1 (N.D.N.Y.) (holding that the plaintiff's in forma pauperis status did not excuse him from paying the costs of a deposition). Plaintiff was allowed to submit interrogatories, but the record does not show that Plaintiff submitted any interrogatory to the Imam. Furthermore, Plaintiff made his request to depose the Imam on October 21, 2008, which was after the close of discovery. (Obj. Ex. C; Defs.' Mem. p. 8.)  Plaintiff cannot now raise the issue when he had ample to time to present his request to the Court.  Plaintiff's objection is overruled.


III. CONCLUSION

As explained above, Plaintiff's remaining objections are either general, or restate arguments already submitted to and rejected by Magistrate Judge Eaton.  Therefore this Court need

17

only review the remainder of the Report for clear error.  Having

reviewed the Report and finding no clear error, and having

conducted an independent <u>de novo</u> review of the specifically

objected-to portions of the Report, it is ORDERED and ADJUDGED as

follows:

1.   The Report and Recommendation of United States

Magistrate Judge Eaton dated January 28, 2010 is APPROVED,

ADOPTED AND RATIFIED by the Court.

2.   Defendants' Motion for Summary Judgment GRANTED with

regard to all of Plaintiff's claims.

3.   The Clerk of Court is directed to CLOSE the docket in

this case.


SO ORDERED.

DATED:    New York, New York
          January 4, 2011

                                   _Deborah A. Batts_
                                   Deborah A. Batts
                                   United States District Judge




18